GILCHRIST *vs.* THE BROOKLYN GROCERS' MANUFACTURING ASSOCIATION.

The defendant employed the plaintiff to purchase potatoes for, and ship them to, the defendant, at Brooklyn, and agreed to reimburse the plaintiff such sum as he should pay for potatoes, purchased at their market value, and to give him, in addition thereto, five cents per bushel, as commissions for buying, and two cents per bushel for storage. Upon these terms the defendant agreed to buy potatoes for the defendant, at their market value, and to furnish 65 pounds, of one kind, and 70 pounds, of another, to the bushel.

*Held*, 1. That under this agreement the plaintiff was the defendant's disbursing agent, liable in law to his principal for a faithful application of the money disbursed; which was to be reimbursed to him; and that he was bound to pay over any balance found due to his principal, on settlement.

2. That the plaintiff was also liable to the defendant for any failure on his part to furnish one kind of potatoes weighing 65 pounds, and another weighing 70 pounds, to the bushel.

3. That the plaintiff made no contract to guaranty the safe delivery, or safe transportation, of the property purchased by him for the defendant.

4. That if the plaintiff purchased potatoes at the market value, the defendant was bound to pay him that value, with the addition of five cents per bushel for commissions, and two cents per bushel for storage.

5. That if the plaintiff performed other duties, or incurred other liabilities—as in shipping, guarantying for safe delivery, insurance, freight, &c.—beyond the terms of the agreement, the law implied that they were performed or incurred upon terms governed by the known usages of trade among that class of commercial agents.

6. That all means necessary and proper for the performance of such duties, and all necessary expenses incurred, with such additional commissions as the customs of trade allowed therefor, were included in such implied agreement.

Under this agreement, the plaintiff purchased for, and shipped to, the defendant two boat loads of potatoes, and furnished invoices thereof, and also a

Gilchrist v. Brooklyn Grocers' Manufacturing Association.

statement of the accounts, including bills of purchase, quantities, commissions and expenses, and crediting the defendant with advances; claiming, in such statement, a balance of $627.14 as due to the plaintiff. The defendant examined such account, making no objection thereto, except in respect to the amount of potatoes. The plaintiff thereupon deducted from his claim the items objected to; and the defendant paid the balance of the account, besides 25 cents per barrel for freight to be added, which the defendant agreed to reimburse the plaintiff, upon the receipt of the potatoes.

*Held*, 1. That the account thus settled and the balance thereof paid, became an *account stated;* and that the referee erred in opening such account without any legal evidence of fraud, misconduct or mistake, and allowing the defendant to produce evidence to show that the quantity of potatoes contained in the two boats was less than the quantity charged in said account.

2. That, in the absence of any finding that the plaintiff had been guilty of fraud or mistake, and in the face of a finding of an account stated, compromised and settled between the parties, which included the charges for moneys advanced, services performed and commissions demanded, the referee erred in proceeding upon the theory that the risk of transportation in part, and a deficiency of quantity when the property was received by the defendant, was a responsibility of the plaintiff for which he was accountable.

3. That the referee also erred in proceeding upon the theory that by the terms of his agency, the plaintiff guarantied the defendant to be accountable to it that the quantity of potatoes purchased should be estimated or ascertained by the quantity that the defendant should actually receive, in Brooklyn.

4. That in the absence of any evidence that the plaintiff ever agreed to adopt the canal weigh-lock as the standard of measurement, or of proof of its correctness, it was error for the referee to adopt that as the standard. That the defendant was bound to show that the weigh-lock was a true standard.

5. That the referee also erred in excluding evidence, offered by the plaintiff, to prove the custom of doing that kind of business at the place.

The fact that a weigh-lock upon a canal is used for state purposes, to regulate the payment of tolls on freight, is no evidence of entire accuracy, as between parties to an action, in respect to weight.

A PPEAL, by the plaintiff, from a judgment entered upon the report of a referee.

The action was brought to recover for 200 barrels of potatoes, purchased by the plaintiff for the defendant, a corporation, together with $50 for freight, advanced in transporting them from Glen's Falls to New York, by a canal boat, and for commissions at five cents per bushel, and storage and other expenses, altogether amounting to about $515. The defendant admitted being a corporation, denied every other allegation, except

as stated in the answer; admitted directing the purchase of the said 200 barrels; but claimed there was a deficiency in filling the barrels equal to seven barrels, and that the potatoes, instead of being of the kind ordered, were of a mixed and inferior quality, which required picking over and assorting; and set up a counter claim for the depreciation and expenses. The defendant also counter claimed for over payment upon a former account rendered, by reason of the inferior character of the potatoes shipped, and charged therein, and for an over charge of quantity, and for the charges of labor and storage thereof. Also for the careless, negligent and improper conduct of the plaintiff in paying for a larger quantity of potatoes than were shipped and delivered to the defendant; and that an inferior quality of potatoes, and mixed qualities, were shipped and delivered, instead of those directed to be purchased. Also that the plaintiff had received from the defendant $297.34 over and above all sums properly chargeable to it. The plaintiff replied to said counter claims, denying them, and setting up the approval of his conduct as agent, by the defendant, and a settlement of all the claims, except for the 200 barrels sued for.

The action was referred to a sole referee, who reported in favor of the defendant, for $68.90, besides costs. From the judgment entered upon said report the plaintiff appealed.

*A. D. Wait*, for the plaintiff.

*Tanner & Potter*, for the defendant.

P. POTTER, J. It is claimed that the conclusions of law of the referee are based upon improper findings of fact. If this is found to be so, the judgment is erroneous. This casts upon the court the necessity of some review of the facts in the case. The labor of this review,

Gilchrist *v.* Brooklyn Grocers' Manufacturing Association.

however, is somewhat abridged by the finding of fact as to the relations of the parties towards each other. The first finding of fact is so sustained by evidence that it becomes unnecessary to examine it further. It is as follows:

"That defendant is a corporation as stated in plaintiff's complaint, and that defendant, by its agent, on the 26th day of October, 1868, employed the plaintiff to purchase potatoes for and ship same to defendant at Brooklyn, New York, *and agreed to reimburse plaintiff such sum as he should pay for potatoes for defendant*, the potatoes to be purchased at their market value, and give him in addition thereto, five cents per bushel as commission or compensation for buying the same, and two cents per bushel for storage. And plaintiff agreed, upon such terms, to buy potatoes for defendant, and at their market value, and to furnish defendant sixty-five pounds of Jackson White potatoes and seventy pounds of Peach Blows to the bushel: and that the market value of Jackson Whites, was sixty-five cents, and of Peach Blows, seventy cents per bushel."

If this finding gives the correct terms upon which the plaintiff was employed, he was the defendant's agent, at a fixed compensation. He was to be the defendant's disbursing agent; liable in law to his principal for a faithful application of its money, or of his own if advanced, in behalf of his principal; which was to be reimbursed to him; and in law the plaintiff was bound to pay over any balance due to his principal on settlement, or which he retained in his hands by reason of mistake, over charges, extra commissions or fraudulent conduct on his part. He was also, doubtless, liable to the defendant for any failure on his part to furnish one kind of potatoes weighing sixty-five pounds, and the other seventy pounds to the bushel. If he complied with these terms on his part, he performed his agreement. There is no *direct* finding, in the case, by the

referee, that each of the varieties of the potatoes furnished did not weigh, per bushel, the number of pounds mentioned or specified in the terms of the employment. This point calls for no further consideration.

By this agreement, if the plaintiff purchased potatoes at the market value, the defendant was bound to pay him that value, with the addition of five cents per bushel for commissions, and two cents per bushel for storage. There is nothing in this agreement (as found by the referee,) making the plaintiff liable in regard to shipping, guarantying, or for safe delivery, insurance, freight or other expenses. If these duties were also performed by the plaintiff, beyond the terms of the agreement, the law implies, in the absence of an express agreement, that they were performed upon terms governed by the known usages of trade, among such commercial agents. And that all means necessary and proper for the performance of such duties, and all necessary expenses incurred, with such additional commissions as the customs of trade allow therefor, are included in the implied agreement. We need not cite authority for this. The plaintiff did perform some other agencies, and incurred expenses, and forwarded to the defendant two canal boat loads of potatoes, before the forwarding of the 200 barrels for which this action is brought. For two boat loads thus forwarded, invoices were furnished to the defendant, and also a statement of the accounts, including bills of purchase, quantities, prices, commissions and expenses, and crediting the defendant with advances. In these statements furnished the defendant, of the quantity of potatoes furnished, and expenses, &c., the plaintiff claimed a balance coming to him of $627.14. In relation to these statements, made by the plaintiff to the defendant, the referee finds as follows : "That defendant saw said account and examined the same, and all the items thereof. That defendant made no objection to any claim of the plaintiff as stated in

said account, except defendant did object to reimbursing plaintiff in full for that amount of potatoes. Upon such objection being made, plaintiff deducted from the gross amount of money claimed by him in said account, four hundred and sixty-five dollars, being the amount claimed for the two hundred barrels of potatoes, and eighteen dollars and fifty cents as shortage on the boat load of Jackson Whites ; and upon such deduction being made, defendant paid the balance of the amount which plaintiff claimed to be reimbursed, leaving due plaintiff as he claimed, four hundred and sixty-five dollars, besides twenty-five cents per barrel for freight to be added, which defendant agreed to reimburse plaintiff if, upon receipt of potatoes, all was right." This account was rendered by the plaintiff before the arrival of the 200 barrels for which this action is brought but, included them. This charge, therefore, it will be seen, was deducted, together with $18.50 for shortage, upon the potatoes charged in the account ; and for the difference or balance, after such deduction, the defendant paid the plaintiff.

So stood the accounts, as liquidated between the parties, prior to the arrival of the 200 barrels in suit. No question can arise as to any allowance made by the referee, for any deficiency in quantity or quality of the potatoes in the 200 barrels sued for ; nor for the reasonable charges of the defendant in picking over and assorting them, if they were of mixed qualities. But an objection is raised, that the referee improperly opened the account which had been settled, in relation to the two boat loads that had been previously furnished ; and that he has allowed the defendant to produce evidence tending to show that the quantity of potatoes contained in the said two boat loads was less than the quantity charged in said account and so settled for. I am inclined to think from the contract between the parties as found by the referee, that his ruling

to open this account was error. Assuming his first finding of fact to be true, the plaintiff was the defendant's agent; his purchases of potatoes were for the defendant; his acts in this respect were the acts of the defendant; and though he owed the defendant as principal, a duty, as his agent in the disbursement of money, the plaintiff made no contract to guaranty the safe delivery, or safe transportation of the property purchased by him for the defendant. By his agreement, the plaintiff was to purchase potatoes for the defendant at their market value; and even if this agreement expressly, or by implication, included the duty of oversight in shipping them off by canal boats, still his duty as agent demanded nothing more of him than the exercise of reasonable skill and ordinary diligence in its performance; and if he performed his duty in this manner, his only liability to the defendant was that occasioned by a want of that reasonable skill, or, for ordinary negligence. The agreement of the defendant was, "*to reimburse the plaintiff such sum as he should pay for potatoes, for defendant.*" If, in doing this, the defendant was even defrauded; if still, he acted with reasonable skill and ordinary diligence, the loss, if any, was that of the defendant. If there happened afterwards to be found short measure, deficiency in quantity as compared with plaintiff's bill, or, if a quality of potatoes was purchased inferior to his instructions, in that respect given, the liability of the plaintiff must still depend upon the question, whether or not, he had performed his agency with reasonable skill, and ordinary diligence. Subject to this rule of duty to be performed on the part of the plaintiff, his acts were the acts of the defendant; and the real question or issue on the trial was, whether the plaintiff had advanced the moneys, and performed the duties charged in the bill.

The only exception is, that of his commissions of five cents a bushel for purchasing, and two cents per bushel

for storage. This, of course, depended upon the number of bushels purchased and stored. The referee proceeded upon the theory, as his report shows, that the risk of transportation, in part, and the deficiency of quantity when received by the defendant, was a responsibility of the plaintiff, for which he was accountable; and this without any finding that the plaintiff had been guilty of fraud or mistake on his part; and also in the face of the finding of an account stated, compromised and settled between the parties; and which included the charges for moneys advanced, services performed and commissions demanded.

It will be seen that the referee has proceeded upon the theory that, by the terms of this agency, the plaintiff guaranteed the defendant to be accountable to it, that the quantity of potatoes purchased should be estimated or ascertained by the quantity that the defendant should actually receive in Brooklyn. That the latter was bound to reimburse the plaintiff for such number of bushels, only, as should be the ascertained quantity, by taking the aggregate quantity in weight, divided by seventy, the number of pounds which he says the plaintiff agreed to furnish for a bushel. Without adverting to a mistake in fact, of five pounds per bushel for certain qualities mentioned in the agreement, it is well to see the basis of the referee's conclusions of fact and law, and his method of estimating these quantities; and all the reasons given for opening the account stated. This will be found in his fifth finding, as follows:

"5th. That defendant did not know, at the time such account was rendered and payment made, how many bushels of potatoes either of said boat loads contained, except as claimed and stated by plaintiff. That said two boat loads of potatoes were weighed at Waterford in the weigh-lock on Champlain canal, on their way to Brooklyn, and that by such weight, which I find to be correct, the boat Emma Flora had two hundred and

twenty-four thousand six hundred pounds, the A. F. Williams one hundred and ninety-five thousand, making on both boats four hundred and nineteen thousand six hundred pounds, which being divided by seventy, the number of pounds plaintiff agreed to furnish for a bushel, gives five thousand nine hundred and ninety-four and one-third bushels, to which add five hundred bushels, the amount which I find the two hundred barrels contained, and it gives six thousand four hundred and ninety-four and one-third bushels, which I find is the whole number of bushels of potatoes shipped on said two boat loads by plaintiff, which being deducted from seven thousand two hundred and thirty-seven bushels, the amount claimed by plaintiff, leaves seven hundred and forty-two and two-thirds bushels, which number of bushels I find plaintiff had charged as furnished and been reimbursed for by defendant, besides storage and commission on the same at price agreed, more than he had in fact purchased for and delivered to defendant."

It will be seen from this finding, that the referee, instead of regarding the plaintiff as the defendant's agent, and holding him to that kind of liability, treats him as a principal, and as making an agreement as a principal, with another principal. This is in conflict with his first finding of fact. This first finding is but what the common law would have characterized the employment, without an express agreement. (*See Story on Agency*, §§ 335, 336.)

But suppose we are in error in our views in relation to the character of the plaintiff's employment, and that the referee was right in holding the plaintiff as a principal, liable and accountable for the delivery to the defendant of potatoes at Brooklyn, at seventy pounds to the bushel. In that case the *onus* of showing the deficiency was upon the defendant. There is no evidence that the plaintiff ever agreed to adopt the canal weigh-lock, as

the standard of measurement, and the defendant was bound to show that this standard was a true one. This was not done. The referee adopted this as the standard. There was no evidence of its correctness. The fact that the weigh-lock was used for state purposes, to regulate the payment of tolls on freight, is no evidence of entire accuracy, as between parties to an action, as to weight. But more objectionable still, there is no evidence to prove the weight, even by this standard. The only evidence as to the boat "Emma Flora," was by the witness Peter Waldron, to whom, while on the stand, a book was presented, containing an entry of the weight of this boat, of the date of November 10, 1868. He answers: "To the best of my knowledge and belief, *if that is my handwriting*, I weighed the boat; think it is my handwriting; to the best of my belief, the boat was weighed correct." * * "I won't swear positive the entry is in my handwriting." * * "I was there acting as clerk in the collector's office; as such, I had nothing to do with weighing boats." * * "Thomas Vandercar was weigh-master at that time." * * "I have no recollection, independent of this book; I have no knowledge of the accuracy of these scales." The plaintiff's counsel moved to strike out the evidence of this witness as to weight, on the ground that it was incompetent and inadmissible, stating grounds, &c. The motion was denied, and the plaintiff excepted. The witness was then further examined, and said: "I know my own handwriting, generally; I don't know why black lines are drawn on the entry; this is entered on another page, under the head of November 12th; it is entered in somebody's handwriting that I don't know." * * "I am acquainted with the handwriting of Vandercar; the entries are not his, under that date; for aught I know, it was weighed on the 12th, by some other person; there is nothing in the book that I can swear positively is in my handwriting." The plaintiff

renewed his motion to strike out this testimony, on the same grounds as before. Motion denied, and exception. Witness was further examined: "I won't swear I weighed the boat on November 10th or 12th; I have no recollection of weighing any boat that day; I have no recollection of making any entry of the weight of any boat that day." Then, on a further direct examination, he said: "It resembles the book that was used for keeping the weight of boats." * * "Vandercar was weigh-master; assistants, George H. Vanderwerker and James H. Connolly; occasionally, in their absence, I weighed boats at their request; when I weighed a boat, I made an entry on the book." On further cross-examination, he said: "I had no assistant to help me when I weighed; I was not sworn as weigh-master, or assistant." The plaintiff again renewed the motion to strike out, on same grounds. Motion denied, and exception. This is the only evidence in the case, of the weight of the boat "Emma Flora." In the absence of the weigh-master, or either of his sworn assistants; in the absence of any evidence that the book produced was the book of entries of the weigh-master; in the absence of any evidence of a knowledge of the handwriting of the entry in the book produced; in the face of an erasure of the entry claimed to be in the handwriting of the witness on the 10th of November, and another entry in an unknown hand on the 12th, of the weight of the same boat, in the same weigh-lock; in the absence of any proof of the accuracy of the water scales, this referee adopts the entry in that book as evidence, and *decides*, as a question of fact, from what is stated by this witness, that the potatoes on board of the "Emma Flora" weighed just 24,600 pounds. It needs no other error than this, to reverse a judgment based upon such evidence, or rather without evidence. As to the weight of the other boat, "A. F. Williams," weighed in the same weigh-lock, it was done by James H. Connolly, an

assistant weigh-master, who made an entry in a book. It does not appear to be the book shown to the other witness. He says: "The book is mine." "I won't swear positively I weighed the boat, independent of the book; I think I weighed her the 15th November, 1868." * * "I made that entry at the time." The plaintiff objected to the book as evidence between the parties, and to the lack of evidence as to the accuracy of the scales at the time of the weighing, &c. Objections overruled, and the plaintiff excepted. Upon this evidence the referee found as a fact, that this boat had 195,000 pounds of potatoes. Upon this evidence the referee allows the defendant upon his *counter claim*, and charges the plaintiff, by way of *deficiency*, for above 700 bushels of potatoes; and directs a judgment for the defendant against the plaintiff for $68.90 besides costs.

The errors above pointed out are sufficient to reverse the judgment; but inasmuch as there should be a new trial, as I think, there is another objection to the finding of the referee, which I think is erroneous and should be pointed out for consideration on a future trial. The account which the plaintiff made out and presented to the defendant, was examined by the latter, criticised, afterwards compromised by deductions made between the parties and accepted, and the balance paid by the defendant. It thus became what is known in law as "an account stated." "To make an account stated, it is sufficient that the account has been examined and assented to as correct by both parties." (*Lockwood* v. *Thorne*, 11 *N. Y.* 170.) "An account stated is conclusive upon. the parties, unless impeached for fraud or mistake." (*S. C.*, 18 *N. Y.* 288.) In *Wilde* v. *Jenkins*, (4 *Paige*, 481,) Chancellor Walworth held "that the practice of opening accounts which have been adjusted by the parties themselves, who could best understand them, is not to be encouraged; and it should never be done upon an allegation of error, and supported by

doubtful, *or even probable testimony, only,* where no *fraud* has been practised by one party on the other.'' (*Philips* v. *Belden,* 2 *Edw. Ch.* 1.) In the case at bar, the defendant makes no charge of fraud against the plaintiff; nor even of mistake, and there is no evidence of it, unless it is to be inferred; nor does the referee find either fraud, misconduct or mistake, in terms. He assumes an error and opens a settled account, not upon improbable and uncertain evidence, only, but without legal evidence. In this, also, I think he erred.

It is quite clear, also, that the referee erred in excluding the evidence offered by the plaintiff to prove the custom of doing that kind of business, at the place. (*Story on Agency,* §§ 185, 95, 96.)

The judgment should be reversed, and a new trial ordered, costs to abide the event. Referee discharged.

MILLER, P. J., and PARKER, J., concurred in the result.

Judgment reversed, and new trial granted.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, March 5, 1873. *Miller, Parker* and *Potter,* Justices.]